By the Court.—Van Vorst, J.
The plaintiffs be *306 came sureties on an undertaking to discharge an attachment in an action brought against the Central American Transit Company. For their indemnity they held two steamships of the company, the America and the Moses Taylor. Subsequently, the affairs of the company not being prosperous, an arrangement was projected by and between the Transit Company and another corporation, the North American Steamship Company, by which the former company agreed to sell to the latter its steamships and other property for the sum of $600,000.
The title to the two steamships above mentioned was in the plaintiffs.
The plaintiffs declined to part with the steamships unless they were indemnified against the liability which they had assumed by becoming sureties on the undertaking in the suit in which the attachment was issued, and which was then pending and undetermined. Plaintiffs claimed that $40,000 of the $600,000, which was agreed to be paid for the property of the Transit Company, should be set aside for their ultimate indemnity.
After some negotiation, it was finally arranged and agreed that a note for $40,000 should be given by the purchasing to the selling company, and that the same should be placed in the hands of the defendant, to be held by him for plaintiffs’ indemnity.
Such note was accordingly made and delivered to the Transit Company, signed, on the behalf of the purchasing company, by the defendant as its president. The note was drawn payable on demand, and was, by the treasurer of the Transit Company, the payee thereof, indorsed over and delivered to the defendant, who thereupon executed and delivered a receipt to the Transit Company, in and by which the defendant acknowledged that the note had been indorsed over and delivered to him “to hold the same and the proceeds thereof, to secure, indemnify and save harmless” *307 the plaintiffs, for being sureties to release the property attached. The note and receipt were dated April 23, 1876.
The American Transit Company had, by a resolution adopted by its board of directors, dated the same day, resolved to accept the note as part of the consideration money for the property in question sold to the North American Steamship Company, and had authorized and directed the same to be indorsed to the defendant, and had empowered and directed him to hold the same and the proceeds thereof (but without personal liability, except for fraud and willful negligence), for the purposes mentioned in the receipt signed by the defendant. The arrangement, consummated by the delivery of the note to the defendants as their security, was satisfactory to the plaintiffs, and in reliance upon the same the plaintiffs executed transfers of, and delivered the two steamships to the purchasing company. The defendant’s receipt, executed upon the delivery to him of the note for $40,000, was at the time shown to the plaintiffs.
The learned judge below decided that the resolution of the directors of the Transit Company, and the defendant’s receipt, imposed upon him no duty to collect the note in question.
But he did certainly occupy a trust relation towards the Transit Company and the plaintiffs, the extent of his engagement, however, being limited by the terms of the resolution and receipt.
Although he may not have been, under any duty to enforce by affirmative action the payment of the note, which was payable on demand, without positive direction from those interested in its collection, yet he was under a duty to hold the note, and, when received, its proceeds.
Did he do that? According to his own testimony, he at once delivered the note to the treasurer of the *308 purchasing corporation, of which he was president, and the same was kept and retained by him until after the North American Steamship Company became insolvent, and it was afterwards found among the papers of the receiver of that corporation. The treasurer of the purchasing corporation testified, however, that the note was in the defendant’s possession, in his private office in Lewis street, for a time, and was then brought down by the defendant to the office of the company, and was placed in his hands.
Payments were made by the purchasing corporation on account-of the $600,000, the consideration agreed to be paid for the steamships and other property, until the whole amount was, in fact, paid.
The defendant was the president of the purchasing corporation, and was, for a time at least, the president of the Transit Company, and the active duty of managing the affairs, and adjusting the concerns of the former company largely rested upon him. The defendant was acquainted with all the facts and circumstances which entered into the creation of the note, and agreed to take the attitude of trustee in the premises. He knew the straitened condition of both companies, and that the Transit Company had parted with all its property, and that the purchasing company needed funds to carry on its business. He frequently came to its aid with his own means to a very large amount. It must have been present to his mind that the plaintiffs’ only effective means of indemnity against loss occasioned by their becoming sureties for the Transit Company was through the note, reserved to meet it.
The evidence shows that he did feel some responsibility about the payment of the note, and that his trust with respect thereto should be discharged, and his knowledge of the affairs of both companies, and his active relation thereto, imposed some responsibility.
In one or more interviews with the treasurer of the *309 purchasing company, to whose care he had intrusted the note, the treasurer stated that $40,000 of the sum agreed to be paid for the property of the Transit Company ought to be set aside, and held to meet the note. The defendant replied that there was no immediate need for that, but that he had to take care of the interest on the note before the entire amount of $600,-000 should be disbursed.
It appears that this whole sum has been, in fact, paid by the purchasing corporation to and for the use of the Transit Company, subsequently to the purchase. The defendant, however, testified that the note in question has not, in fact, been paid, and it was produced upon the trial in its original condition.
But the person who acted as treasurer of the company testified that in statements, made by the defendant, of the condition of the company, to the directors, the note was entered as paid. This testimony we do not understand to be denied.
Such statements, made by defendant, who had the principal control and charge of the affairs of the company, and whose signature to checks for the payment of money was necessary, would suggest to the directors that it was not necessary to set aside specific funds to meet the obligation, which appeared by the statement to be satisfied.
If the note was not, in fact, paid, we cannot but think that the rendering of such statements to the directors by the defendant was a breach of duty towards the plaintiffs and the Transit Company. It was prejudicial to the interests of the plaintiffs, for whose indemnity the defendant held the note.
We are not prepared to say that, by the simple delivery of the note to the treasurer of the purchasing corporation, who was also the secretary or agent of the defendant, the defendant lost control of the note. He could at any time have resumed possession, if it had *310 not, in fact, been paid. But such fact, in connection with the rendering of statements, showing that the note was paid, give some color to the idea that the note was treated by the defendant and the steamship company as paid.
We do not consider that such statements, unless the note was actually paid, are consistent with such holding of the note for the plaintiffs’ indemnity as the defendant’s obligations under the resolution of the directors of the Transit Company and his own receipt clearly imposed.
When the plaintiffs rested their case, the learned judge dismissed the complaint upon the plaintiff’s evidence, no explanation having been given of these alleged statements in respect to the note.
We think that such disposition of the case was erroneous, and that the complaint was improperly dismissed. The plaintiffs’ case established a cause of action.
Judgment reversed, and new trial ordered, with costs to abide the event.
Speir, J., concurred.